**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ROBERT GROSS,

        Plaintiff,

        v.

CHAD MARTINEZ, CHRISTOPHER
EHLERS, NICHOLAS SCHOEN,
TYLER RYBCZYK, DONALD
FURHOP, and MATTHEW
GIAMANCO,

        Defendants.

No. 22-cv-06843

Judge John F. Kness

**MEMORANDUM OPINION AND ORDER**

Plaintiff brought suit against six Illinois State Police troopers under Section 1983 after Defendants searched Plaintiff's vehicle during a traffic stop. Plaintiff alleges that the search violated his rights under the Fourth Amendment because the initial traffic stop was unlawfully prolonged to permit a canine sniff. Defendants disagree and contend that summary judgment in their favor is appropriate.

For the reasons that follow, the Court holds that the search of Plaintiff's vehicle was reasonable. Accordingly, Defendants' motion for summary judgment is granted.

**I.    BACKGROUND**

While driving to work, Defendant Sgt. Chad Martinez, master sergeant for the Illinois State Police South Tristate Platoon (Dkt. 121 ¶ 4), observed a white Chrysler 300 with Arizona license plates that appeared to be speeding and changing lanes

without signaling.[1] (*Id.* ¶ 5.) After stopping the Chrysler, Sgt. Martinez noted two dogs in the back seat of the vehicle and a large plastic tarp zip-tied to the front headrests. (*Id.* ¶ 6.) Sgt. Martinez spoke with Plaintiff Robert Gross, who provided his Michigan driver's license and a copy of a rental agreement for the vehicle. (*Id.* ¶ 7.)

Sgt. Martinez also observed food containers and trash in the passenger compartment. (*Id.* ¶ 8.) The parties agree that there were prescription pill bottles in the front of the vehicle, but they disagree about where exactly those pill bottles were located. (*Id.*) Plaintiff told Sgt. Martinez that Plaintiff had been driving from Colorado to Plaintiff's home in Michigan since early that morning. (*Id.* ¶ 9.) Plaintiff also told Sgt. Martinez that Plaintiff was skiing in Colorado, but Plaintiff did not appear to have skiing equipment in the vehicle. (*Id.* ¶ 13.)

Sgt. Martinez found these observations odd. Based upon professional experience, Sgt. Martinez knew that Colorado was a source state for narcotics and that Michigan was a destination state. (*Id.* ¶ 10.) Sgt. Martinez likewise knew that I-80 was a corridor for criminal activity, especially at night. (*Id.* ¶ 11.) Sgt. Martinez was aware that dogs are generally not allowed in rental vehicles and that traffickers often use dogs to disrupt police canine operations. (*Id.* ¶ 12.) Sgt. Martinez further found the use of a tarp zip-tied to the headrests uncommon in a rented vehicle. (*Id.* ¶ 14.) Sgt. Martinez also found it odd that Plaintiff did not appear to have skiing equipment in the vehicle despite claiming to have gone skiing in Colorado. (*Id.* ¶ 13.)

---

[1] Although Plaintiff disputes that he was actually speeding, the dispute is immaterial because the parties agree that the initial stop was lawful. (Dkt. 112 at 4.)

Plaintiff accompanied Sgt. Martinez back to his squad car at around 10:38 p.m. (*Id.* ¶ 20.). Sgt. Martinez advised the Plaintiff that, if everything checked out, Plaintiff would receive some warnings and be allowed to continue traveling. (*Id.* ¶¶ 16–17.) Sgt. Martinez was concerned that Plaintiff might be under the influence of drugs or alcohol given the erratic driving and late hour. (*Id.* ¶ 17.) Before entering the squad car, Sgt. Martinez asked if the Plaintiff was armed or had any "concealed carries," and Plaintiff reported having a pocketknife but denied carrying any firearms. (*Id.* ¶¶ 18–19.)

After entering the squad car, Sgt. Martinez began to put Plaintiff's information into the requisite police databases for corroboration. (Dkt. 121 ¶ 23.) When Sgt. Martinez asked Plaintiff whether he had any criminal history, Plaintiff disclosed previous charges for resisting arrest and battery on a police officer in New Mexico. (*Id.* ¶ 24.) Even after advising Plaintiff that he would only receive a warning, Sgt. Martinez noted signs of excessive nervousness in Plaintiff, such as rapid breathing and, when Sgt. Martinez asked about marijuana, turning to look at the rental vehicle. (*Id.* ¶¶ 35–41.) Plaintiff asserts that outward signs of nervousness abated when he learned about the warnings; he further maintains that he did not immediately look toward the rental vehicle when Sgt. Martinez asked about marijuana. (*Id.*) Sgt. Martinez, conversely, noted that his professional training indicated signs of deceit such as fluttering eyes and personal grooming tics when he asked Plaintiff whether there were medications or large amounts of currency in the vehicle. Plaintiff does not dispute any of these facts. (*Id.* ¶ 42.)

Sgt. Martinez asked Plaintiff for his consent to search the rental car; Plaintiff denied the request because he believed it was not germane to the traffic stop. (*Id.* ¶ 32–34.) Sgt. Martinez told Plaintiff that he believed Plaintiff was involved in "some activity" and that he would be searching the vehicle without Plaintiff's consent. (*Id.* ¶ 45.) Sgt. Martinez believed that a search was warranted based on (1) the one way rental between a source and destination state; (2) traveling with dogs; (3) the tarp in the back seat; (4) Plaintiff's alleged nervousness; (5) deceitful answers regarding prescriptions; (6) traveling without stopping; (7) travelling at night; (8) knowledge of I-80 as a corridor for illegal activity; (9) a lack of ski equipment in the vehicle; (10) having hunting dogs in the vehicle without going hunting in Colorado; and (11) a belief that Plaintiff was deceitful when asked about marijuana possession. (Dkt. 121 ¶46.)

Sgt. Martinez deployed his canine partner and conducted a sweep of the exterior of the vehicle. (*Id.* ¶ 47.) Sgt. Martinez's canine alerted to Plaintiff's vehicle near the trunk. (*Id.* ¶¶ 47–48.) The canine sweep lasted less than one minute and was completed by 10:55 p.m. (*Id.* ¶ 49.) Sgt. Martinez obtained the car's key fob and advised Plaintiff that he would search the vehicle. (*Id.* ¶¶ 50–51.) Plaintiff objected due to the lack of a warrant, but Sgt. Martinez stated that one was not necessary. (*Id.* ¶¶ 51–52.) Sgt. Martinez also testified that he called for backup either before conducting the canine sweep or before initiating the search of Plaintiff's vehicle. (Dkt. 105-3 at 43–44.)

Sgt. Martinez began the search at the Chrysler's trunk. (*Id.* ¶ 53.) Sgt.

4

Martinez located several handguns in a red bag. (*Id.* ¶ 54.) Sgt. Martinez asked Plaintiff whether he had a gun permit and concealed carry license; Plaintiff produced both. (*Id.* ¶¶ 55–56.) Sgt. Martinez asked Plaintiff for the key to a large, locked case found in the trunk, but Plaintiff refused to provide the key. (*Id.* ¶ 59.) Sgt. Martinez used bolt cutters to access the case and found several more handguns and hundreds of rounds of ammunition. (*Id.* ¶ 60.)

Other officers arrived on scene to assist Sgt. Martinez. Sgt. Martinez asked Plaintiff to remove the dogs from the back seat so the search could continue. (*Id.* ¶ 62.) Trooper Schoen arrived, assisted in removing the dogs, and stood on the side of the road with Plaintiff while the search continued. (*Id.* ¶ 74.) Trooper Rybczyk also arrived and assisted Sgt. Martinez with the search of the vehicle's interior. (*Id.* ¶ 71.) Several weapons were recovered from the interior of the vehicle along with cannabis plant material. (*Id.* ¶¶ 30, 63–64.) Trooper Giamanco later arrived on scene (*id.* ¶¶ 72–73); Special Agent Ehlers arrived while Plaintiff was still on scene but did not participate in the search nor speak to the Plaintiff (*id.* ¶¶ 77–78); Trooper Furhop arrived on scene after Plaintiff pulled away (*id.* ¶ 79). Plaintiff left the scene at 12:08 a.m. after the search concluded (*id.* ¶¶ 67–68).

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure permits a party to seek summary judgment. To prevail on a motion for summary judgment, the movant must show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).

A genuine dispute of material fact exists when the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes concerning facts that could not determine the of the case need not preclude summary judgment where the undisputed facts demonstrate that one party is entitled to judgment as a matter of law. *Collins v. American Optometric Association*, 693 F.2d 636, 639 (7th Cir. 1982); *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir. 1983).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322. Although all reasonable inferences are drawn in favor of the nonmoving party, the nonmoving party must still show that a genuine dispute of material fact does indeed exist. *Anderson*, 477 U.S. at 249–50. Courts need not accept unsupported assertions of a factual dispute, and the nonmoving party must identify specific admissible evidence showing that there is a genuine dispute of material fact fit for resolution at trial. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).

## III. DISCUSSION

Plaintiff asserts that the extension of the traffic stop was not supported by reasonable suspicion and that the ensuing search was unlawful. (Dkt. 112 at 4–6.) As explained below, the factual record undermines this argument and demonstrates

that Defendants are entitled to judgment as a matter of law.

**A.      Reasonable Suspicion is Required to Prolong a Traffic Stop**

A traffic stop is considered a seizure under the Fourth Amendment, *Delaware v. Prouse*, 440 U.S. 648, 663 (1979), which means that it must be conducted in a reasonable manner. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Given the brief nature of a traffic stop (akin to a *Terry* street stop), police officers are generally only required to have reasonable suspicion that a traffic offense has occurred. *See Knowles v. Iowa*, 525 U.S. 113, 117 (1998). Traffic stops are limited in their scope and duration by the mission of the stop, and a police officer's authority to detain an offending motorist lasts "no longer than is necessary" to address the violation that justified the stop at its inception. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

A traffic stop may become unlawful if it is extended "beyond the time reasonably required to complete the mission" of the stop. *Caballes*, 543 U.S. at 407. Police officers may pursue unrelated inquiries that do not "measurably extend the duration of the stop." *Id*. at 333. Acceptable inquiries include determining whether to issue a ticket or warning, checking drivers' licenses, searching for outstanding warrants, inspecting the vehicle's registration, and reviewing the driver's proof of insurance. *Rodriquez v. United States*, 575 U.S. 348, 355 (2015).

Deploying a police canine at a traffic stop does not fall within the scope of the stop's mission. *Id*. Canine sweeps are targeted at "detecting evidence of ordinary criminal wrongdoing" rather than at roadway safety. *See Indianapolis v. Edmond*, 531 U.S. 32, 40–41 (2000). When a police officer prolongs a traffic stop beyond the

time necessary to investigate the offense, complete related inquiries, attend to officer safety needs, and issue a warning or citation, the stop becomes unlawful unless the officer has an independent basis for continuing the stop. *Rodriguez*, 575 U.S. at 357–58.

Conducting a police canine sweep after issuing a ticket requires independent reasonable suspicion to extend a traffic stop, because the canine sweep adds time to the stop. When a police officer deviates from the mission of a traffic stop to conduct unrelated inquires that extend the total duration of the stop, that stop becomes unlawful. *See Rodriguez*, 575 U.S. at 356–57. As the Seventh Circuit has explained, law enforcement "may not extend a traffic stop with measures like a dog sniff unrelated to the mission of the stop" without being able to show reasonable suspicion independent of the basis for the initial stop. *United States v. Rodriguez-Escalera*, 884 F.3d 661, 668 (7th Cir. 2018).

There is no dispute that the initial traffic stop in this case was lawful. (Dkt. 112 at 4.) Rather, the dispute is whether the stop was unlawfully prolonged due to the canine sniff. On this score, the parties dispute the meaning of *Rodriguez*: Plaintiff argues (Dkt. 112 at 7) that any continued detention after the mission of the traffic stop is completed is unlawful (absent an independent basis for continued detention), but Defendants, citing the Seventh Circuit's decision in *United States v. Johnson*, 93 F.4th 383, 388 (7th Cir. 2024), argue that the additional time taken to conduct the canine sweep was minimal and thus not an unreasonable extension of the stop. (Dkt. 118 at 5–6).

Plaintiff's reading of *Rodriguez* and *Johnson* is more convincing. In *Johnson*, the Seventh Circuit concluded that the stop was "prolonged not by the dog sniff, but by [the officer's] discovery that he would have to impound [the plaintiff's] car and not allow him to drive away in it." 93 F.4th at 388. *Johnson*'s holding was not that a de minimis extension to conduct a dog sniff is permissible, but that the traffic stop remained ongoing for other permissible reasons when the canine sweep occurred. *See id*. Accordingly, the correct inquiry here is whether there was an independent basis to prolong the stop and conduct the canine sweep.

**B. Sgt. Martinez Had Reasonable Suspicion to Prolong the Stop**

As explained above, independent reasonable suspicion is required before an officer is allowed to prolong a traffic stop to conduct an unrelated canine sweep. *Rodriguez*, 575 U.S. at 355. Reasonable suspicion is a lower standard than probable cause and serves as a "minimal level of objective justification." *INS v. Delgado,* 566 U.S. 210, 217 (1984). Reasonable suspicion requires more than a mere hunch and requires the searching officer to have a particularized and objective basis to believe that wrongdoing may be afoot. *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

Courts examine the totality of the circumstances to determine whether the officer has a particularized and objective basis for continuing the stop. *Id*. Officers are entitled to rely on their professional experience and specialized training to make reasonable deductions and inferences about the information that the officer learns in the field. *United States v. Cortez*, 449 U.S. 411, 418 (1981). Courts must avoid taking a "divide and conquer approach" and should consider the officer's particular reasons

9

together instead of separately. *United States v. Arvizu*, 534 U.S. 266, 274 (2002). There is no neat rule for when reasonable suspicion is met, but officers must avoid rationales that are overly general and would result in widespread searches. *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

Although no hard-and-fast, checklist-based standard for reasonable suspicion exists, courts have recognized numerous factors that can support reasonable suspicion. For example, unnecessary nervousness can support reasonable suspicion. *Rodriguez-Escalera*, 884 F.3d at 669. Traveling with a suspicious covering over the cargo area of a vehicle has been recognized as contributing to reasonable suspicion. *United States v. Cole*, 21 F.4th 421, 434–35 (7th Cir. 2021). Criminal history, when accompanied by other articulable factors, can also contribute to the formation of reasonable suspicion. *United States v. Walden*, 146 F.3d 487, 490–91 (7th Cir.1998). And the use of a one-way rental car for apparent long-distance, nonstop travel has supported an officer's objectively reasonable suspicion even though those factors taken alone would be innocent. *United States v. Finke*, 85 F.3d 1275, 1280 (7th Cir. 1996).

Plaintiff argues that Sgt. Martinez's suspicion should have dissipated after Plaintiff stated he had a home in Colorado and identified the prescription medication in his vehicle. (Dkt. 112 at 5–6.) According to Plaintiff, these statements prevented Sgt. Martinez under *Rodriguez-Escalera* from forming an objectively reasonable suspicion. (Dkt. 112 at 5–6.) *(*citing 884 F.3d at 669–71). But although the Court can consider the effect of those disclosures, Sgt. Martinez was not required to believe

10

them. *Id*. Moreover, it is the totality of factors Sgt. Martinez observed that controls whether reasonable suspicion was present. *Arvizu*, 534 U.S. at 274.

Taken together, the factors Sgt. Martinez observed gave rise to an objectively reasonable suspicion that justified prolonging the traffic stop and deploying the canine. These factors included Plaintiff's long-range travel, refuse strewn about the car, use of a one-way rental car, travel under cover of darkness, and most notably the tarp affixed to the back seat with the dogs on top of it. (Dkt. 121 ¶ 46.) These factors, although certainly capable of innocent explanations, reasonably caused Sgt. Martinez to be suspicious given the context of the stop and his training and experience as a criminal patrol and canine officer. (*Id*. ¶¶ 2–3, 10–12.)

Moreover, the added context of the stop including the location along a known drug trafficking route (*id*. ¶ 11), late at night, travel from a drug source to a drug destination state (*id*. ¶ 10), Plaintiff's criminal history (*id*. ¶ 24), indicators of deception (*id*. ¶ 39.), and the seeming inconsistency between Plaintiff's travel plans and the lack of luggage (*id*. ¶ 13) added weight to the reasonable-suspicion side of the scale. *See Finke*, 85 F.3d at 1280. Nor was Sgt. Martinez required to accept Plaintiff's proffered explanations for the suspicious circumstances. *See Rodriguez-Escalera*, 884 F.3d at 669-71. Although Plaintiff's explanation of labeled prescription drugs may have mitigated their suspiciousness, it did not fully dissipate Sgt. Martinez's concerns nor counteract the other observations set forth above.[2]

---

[2] Although the parties dispute the extent and duration of Plaintiff's nervousness, the motion for summary judgment does not rise or fall on that dispute as there remains sufficient undisputed evidence to determine that Sgt. Martinez had reasonable suspicion to prolong the stop. *Collins*, 693 F.2d at 639; *Egger*, 710 F.2d at 296.

11

Based on these considerations, the Court holds that Sgt. Martinez's brief canine sweep was reasonable under the Fourth Amendment.

## C.     The Search of Plaintiff's Car Was Supported by Probable Cause

A separate dispute concerns whether the search of Plaintiff's vehicle was justified by probable cause. Probable cause is a level of suspicion greater than reasonable suspicion but still lower than a preponderance of the evidence. *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975); *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003). Police officers need not secure consent nor a warrant to search a vehicle when they have probable cause to believe that evidence of a crime or contraband might be present in the vehicle. *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999). Police officers may obtain probable cause by using a well-trained narcotics detecting canine. *United States v. Place*, 462 U.S 696, 707 (1983). Probable cause arises when a canine alerts from a position at which the dog and its handler are lawfully allowed to be. *Florida v. Jardines*, 596 U.S. 1, 10 (2013). Alerts from trained canines are considered *sui generis* because they do not compromise any legitimate interest in privacy and are highly reliable. *Place*, 696 U.S. at 707.

In this case, the canine sweep provided probable cause to search Plaintiff's vehicle. Sgt. Martinez and his canine partner are both trained and certified for narcotics detection. (Dkt. 121 ¶¶ 2–3; Dkt. 119 ¶¶ 5–6.) The canine sweep was conducted on the roadside: a permissible location. *See Jardines*, 596 U.S. at 10. Based on these undisputed facts and the *sui generis* nature of this canine alert, Sgt.

12

Martinez had probable cause to search Plaintiff's vehicle. *Place*, 696 U.S. at 707.

### D. The Collective Knowledge Doctrine Applies to Defendants Giamanco, Rybczyk, and Schoen

Beyond the allegations against Sgt. Martinez, Plaintiff maintains that the other Defendants are liable because they lacked independent probable cause and unlawfully participated in Sgt. Martinez's search. (Dkt. 112 at 8–10.) Defendants respond that the collective knowledge doctrine applies to shield their conduct from liability. Plaintiff counters that there is no evidence Defendants communicated with each other. (Dkt. 112 at 8–10; Dkt. 118 at 12–15.) Defendant Schoen argues separately that summary judgment should be granted on his behalf because he did not directly participate in the search and merely remained by the roadside with Plaintiff and Plaintiff's dogs. (Dkt. 118 at 14–15.) Plaintiff responds, without citations to the record, that Trooper Schoen's actions were essential to facilitating the search and should be viewed in the same light as an officer who actually searched the vehicle. (Dkt. 112 at 10.) As explained below, however, the collective knowledge shields Defendants Giamanco, Rybczyk, and Schoen from liability.

Under the collective knowledge doctrine, assisting officers who lack personal knowledge of facts contributing to probable cause or reasonable suspicion can lawfully act on knowledge possessed by other officers. *See, e.g., United States v. Hensley*, 469 U.S. 221, 232 (1985). Actions taken by police officers fall under the collective knowledge doctrine when three elements are met: (1) the searching officer acts in objective reliance on information received from another officer; (2) the officer providing the information had the required level of suspicion (probable cause or

13

reasonable suspicion); and (3) the receiving officer did not act any more invasively than would the transmitting officer have been permitted. *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010); *United States v. Street*, 917 F.3d 586, 596–97 (7th Cir. 2019). This standard is even more permissive when multiple officers are working at the same scene and allows a court to impute knowledge between the officers even when there is no express testimony that information has been conveyed between them. *United States v. Nafzger*, 974 F.2d 906, 910–11 (7th Cir. 1992); *United States v. Edwards*, 885 F.2d 377, 382 (7th Cir. 1989). It also applies when information is conveyed via officers in the dispatch center. *Torry v. City of Chicago*, 932 F.3d 579, 586 (7th Cir. 2019). Officers are similarly allowed to rely on bulletins and notices requesting the seizure of a suspect even when the seizing officer has no knowledge of the facts supporting that bulletin. *Hensley*, 469 U.S. at 231.

There is no genuine dispute that Defendants communicated with each other at the scene of the traffic stop; and under the collective knowledge doctrine, this knowledge can be imputed. *Nafzger*, 974 F.2d at 910. Sgt. Martinez testified that he called for additional support before the other troopers arrived. (Dkt. 105-3 at 43–44.) Two Defendants testified that they either relied on Sgt. Martinez's determination that a search was appropriate or that obtaining direction from Sgt. Martinez would have been necessary to assist in the search. (Dkt. 105-6 at 30–31 (Defendant Schoen); Dkt. 121 ¶ 73 (Defendant Giamanco).) Although Plaintiff cites Trooper Rybczyk's testimony to argue that a genuine dispute of material fact exists, this testimony cuts in neither direction as the trooper reports not remembering the details of the incident.

(Dkt. 121 at 65.)

Even if there is a dispute as to whether there was explicit communication between the troopers, this does not prevent granting summary judgment. Explicit testimony of communication between officers at the same scene is not required by the collective knowledge doctrine. *Nafzger*, 974 F.2d at 911. Officers are entitled to rely on requests to detain or search an individual by other officers even when they have no knowledge of the underlying facts that give the requesting officer reasonable suspicion or probable cause. *Hensley*, 469 U.S. at 231. Considering that Sgt. Martinez had probable cause to initiate the search; the troopers were all working at the same scene; there is evidence of some communication between the troopers; the assisting troopers did not act more invasively than Sgt. Martinez was permitted to; and there is no evidence to suggest that the officers did not communicate at the scene, summary judgment is proper as to Defendants Giamanco, Rybczyk, and Schoen. (Dkt. 121 ¶¶ 75–76.)

### E. Defendants Ehlers and Furhop are Entitled to Summary Judgment

Defendants Ehlers and Furhop contend that Plaintiff has failed to produce evidence suggesting that they violated Plaintiff's Fourth Amendment rights. According to Defendant Ehlers, he arrived after the search was completed and did not interact with Plaintiff. Defendant Furhop arrived at the scene after Plaintiff had departed. Based on these circumstances, these Defendants contend that they are entitled to summary judgment. For his part, Plaintiff does not respond to Defendants' arguments seeking summary judgment, nor does he dispute the facts as presented by

15

Defendants Ehlers and Furhop. (Dkt. 112; Dkt. 121 ¶¶ 77–79.)

Plaintiff bears the burden of responding to a motion for summary judgment with citations to the record that suggest a genuine issue of material fact. *Grant,* 870 F.3d at 568. Plaintiff must also produce admissible evidence that can be used to support his claims at trial. Plaintiff fails to meet either of these requirements.

To repeat: Defendants Ehlers and Furhop assert that they did not participate in the search and thus cannot be liable to Plaintiff. *Grant*, 870 F.3d at 568. Moreover, They support their assertion with citations to the record (Dkt. 121, ¶¶ 77–79), and Plaintiff does not dispute these facts. (*Id*.) Accordingly, summary judgment in favor of Defendants Ehlers and Furhop is proper because Plaintiff both fails to respond to the motion for summary judgment and fails to present evidence of those troopers' liability. *See Celotex Corp.,* 477 U.S. at 322; *Grant*, 870 F.3d at 568.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted.

SO ORDERED in No. 22-cv-06843.

Date: March 30, 2026

_____
JOHN F. KNESS
United States District Judge

16